STATE of Minnesota, Respondent,

v.

Dylan Micheal KELLEY, Appellant.

No. A12–0993.

Court of Appeals of Minnesota.

July 1, 2013.

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, MN; and Karl L. Schmidt, Acting Benton County Attorney, Foley, MN, for respondent.

Bradford Colbert, Legal Assistance to Minnesota Prisoners, St. Paul, MN, for appellant.

Considered and decided by ROSS, Presiding Judge; CHUTICH, Judge; and KIRK, Judge.

## OPINION

KIRK, Judge.

We are asked to decide whether the district court committed plain error in its instructions on accomplice liability during the criminal trial of appellant Dylan Micheal Kelley.[1] Appellant has not shown that he objected to the error, that the error was plain, that it affected his substantial rights, and that it affected the fairness and integrity of his trial. Therefore, we affirm.

## FACTS

Early on the morning of January 4, 2011, a 17–year–old male victim was beaten and robbed in St. Cloud. On the evening before the attack, the victim drove his friend, S.S., to St. Cloud to go shopping. The shopping mall was closed because it was late, and a restaurant refused to serve the victim because he appeared to be violating curfew laws. They then drove to the apartment of the victim's friend, B.G., where a number of people—including appellant—had gathered for a party. The victim had not met appellant before that night.

The victim asked B.G. for marijuana, and B.G. told the victim to speak to appellant. When the victim approached appellant asking for marijuana, appellant agreed to ride with the victim to the home of an unidentified person, where the victim could buy marijuana. When they arrived at the home of the marijuana dealer, the victim took out his wallet in full view of appellant, removed $60 of the approximately $300 in the wallet, and gave the money to appellant to pay for the marijuana. The victim waited in the car while appellant went in the house and bought marijuana.

When appellant returned, the victim complained that appellant had only returned with a small amount of marijuana for the money he had paid. Appellant told the victim that the marijuana dealer would come to the party with the remaining marijuana the victim was owed. They returned to the party, where the victim smoked some of the marijuana and waited until about 2 a.m., when an unidentified friend of appellant (partner) showed up. About a half hour after the partner arrived at the party, appellant and the partner went outside. A short time later, someone told the victim that appellant wanted to see him outside. When the victim went outside, he found appellant leaning into a vehicle in the parking lot. As the victim approached the car, appellant stood up, turned, and hit the victim in the face.

Appellant's partner then stood behind the victim and held him while appellant repeatedly hit the victim in the face. Eventually, the victim fell to the ground and both appellant and his partner continued to hit the victim in the face and kick him in the sides, face, and head with their

---

1. The appellant's middle name is spelled "Micheal."

work boots, and to step on his hands. They also searched his pockets and repeatedly demanded his wallet. Although the victim's wallet was in his car's center console, he told appellant and his partner that the wallet was inside the apartment where the party was occurring.

Eventually, the victim lost consciousness. Appellant and his partner took the victim's cigarettes, lighter, cell phone, and car keys. When the victim regained consciousness, he re-entered the apartment, went to the bathroom, tried washing the blood off his hands and face, and spit broken teeth from his mouth. The victim asked people at the party to call the police and to take him to the hospital, but they refused because they wanted to avoid police involvement.

The victim passed out on the couch and awoke in the morning. Meanwhile, S.S. inspected the victim's car and discovered that the victim's wallet and money were missing from the center console. When the victim awoke, he found that his car keys and cell phone had been returned. The victim drove with S.S. to the hospital, where he was treated and where he asked the hospital staff to contact the police.

As a result of the attack, three of the victim's lower teeth and two of his upper teeth were fractured, and the inside of his mouth was lacerated. For about a month after the attack, he could only consume warm liquids through a straw. He also experienced symptoms of anxiety, took prescribed anxiety medication, and refused to leave the house after dark.

At the close of the jury trial, the state, over the objections of appellant, prevailed upon the district court to instruct the jury on accomplice liability. The jury convicted appellant of one count of first-degree aggravated robbery and one count of third-degree assault. This appeal follows.

## ISSUE

Did the district court commit plain error in its jury instructions on accomplice liability?

## ANALYSIS

Appellant argues that the district court's jury instructions on accomplice liability relieved the state of its burden of proving beyond a reasonable doubt that appellant knew that his partner planned to commit a robbery, and that appellant intended his presence at the crime scene to further the commission of the crime. Appellant is not contesting his assault conviction.

A party objecting to jury instructions must do so on the record and must state specific grounds for the objection. Minn. R.Crim. P. 26.03, subd. 19(4)(b), (d). Appellant's objection to the jury instruction at the district court was premised on the state's failure to advance an accomplice-liability theory of guilt until late in the trial. He argued to the district court that the instruction should not be given at all. But he has abandoned that theory on appeal. Now he argues that the instruction was erroneous because it failed to properly instruct the jury that it must find beyond a reasonable doubt that appellant knowingly and intentionally assisted in the commission of a crime.

Appellant initially argued here that the district court's jury instruction should be reviewed for abuse of discretion. *See State v. Koppi*, 798 N.W.2d 358, 361 (Minn. 2011) ("We review a district court's decision to give a requested jury instruction for an abuse of discretion."). But once the state pointed out that appellant had not properly objected to the instruction at the district court because his objection did not address the issue he now raises on appeal, appellant agreed that his claims here ought to be treated as arising from an

unobjected-to error. Appellant was right to concede this point because "the purpose of an objection ... is to inform the court upon what ground the objector claims [error]. Hence a party must state his point so definitely that the court may intelligently rule upon it...." *Nelson v. Chicago, M. & St. P. Ry.*, 28 N.W. 215, 216, 35 Minn. 170, 171 (1886).

■ "[B]efore an appellate court reviews an unobjected-to error, there must be (1) error; (2) that is plain; and (3) the error must affect substantial rights." *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998). "If each of these prongs is met, [an appellate court] will address the error only if it seriously affects the fairness and integrity of the judicial proceedings." *State v. Kuhlmann*, 806 N.W.2d 844, 852–53 (Minn.2011). The plain-error doctrine is codified in Minn. R.Crim. P. 31.02, which provides that "[p]lain error affecting a substantial right can be considered" even if the error was not brought to the district court's attention.

■ A familiar procedural principle provides that a party's rights in criminal and civil cases may be forfeited if they fail to make a timely objection. *United States v. Olano*, 507 U.S. 725, 731, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993) (citing *Yakus v. United States*, 321 U.S. 414, 444, 64 S.Ct. 660, 677, 88 L.Ed. 834 (1944)). While a defendant's failure to object to an error in the jury instructions typically constitutes a waiver of the right of appeal, "a reviewing court can reverse if the instruction constituted plain error." *State v. Prtine*, 784 N.W.2d 303, 316 (Minn.2010). However, "anyone familiar with the work of courts understands that errors are a constant in the trial process, that most do not much matter, and that a reflexive inclination by appellate courts to reverse because of unpreserved error would be fatal." *Puckett v. United States*, 556 U.S. 129, 134, 129 S.Ct. 1423, 1428, 173 L.Ed.2d 266 (2009) (quoting *United States v. Padilla*, 415 F.3d 211, 224 (1st Cir.2005) (en banc) (Boudin, C.J., concurring)) (quotation marks omitted).

## A. The jury instructions were erroneous.

■ Appellant was convicted of his offenses on January 23, 2012, and sentenced on March 15, 2012. He filed his notice of appeal on June 11, 2012. These dates are important because, on September 19, 2012, the Minnesota Supreme Court issued its decision in *State v. Milton*, 821 N.W.2d 789 (Minn.2012), a case that directly addresses the jury instruction that appellant is challenging before us.

Milton appealed his conviction of charges of first-degree felony murder and attempted first-degree felony murder that the state brought in response to a botched drug deal. *Milton*, 821 N.W.2d at 797–98. When delivering its instructions on first-degree felony murder, the district court said, in relevant part, that the elements of the crime include a jury finding that "the defendant or a person whom the defendant intentionally aided caused the death of" the victim. *Id.* at 806.

The supreme court concluded that the instruction was erroneous because the district court failed to explain that "intentionally aided" means that the defendant "(1) knew his alleged accomplices were going to commit a crime, and (2) intended his presence to further the commission of that crime." *Id.*

The supreme court's conclusion was principally based on its 2007 decision in *State v. Mahkuk*, 736 N.W.2d 675 (Minn. 2007). *Id.* at 805–07. There, the supreme court found plain error when a district court instructed the jury that it need only "consider" whether Mahkuk knew his ac-

complice was going to commit a crime and intended his presence to further the crime. *Mahkuk,* 736 N.W.2d at 682. This jury instruction, said the supreme court, relieved the state of its obligation of proving Mahkuk's culpability as an accomplice beyond a reasonable doubt. *Id.* But it was not until *Milton* that the supreme court held that a jury *must* be instructed that a defendant's knowledge that a crime was going to be committed and his intention to further the crime must be proved beyond a reasonable doubt. 821 N.W.2d at 807–08. The *Milton* court concluded that the district court's instructions on accomplice liability for first-degree felony murder were erroneous. *Id.* at 806. The court went on to say that "because we have not yet clearly required district courts to include a specific explanation of the 'intentionally aiding' element until today, we conclude that the court's instructions did not constitute 'clear' or 'obvious' error, and thus the court's error is not plain." *Id.* at 807.

In the present case, the district court instructed the jury as follows:

> The Defendant is guilty of a crime committed by another person when the Defendant has intentionally aided the other person in committing it, or has intentionally advised, hired, counseled, conspired with or otherwise procured the other person to commit it.
>
> If the Defendant intentionally aided another person in committing a crime, or intentionally advised, hired, counseled, conspired with, or otherwise procured the other person to commit it, the Defendant is also guilty of any other crime the other person commits while trying to commit the intended crime, if that other crime was reasonably foreseeable to the Defendant as a probable

consequence of trying to commit the intended crime.

> The Defendant is guilty of a crime, however, only if the other person commits a crime. The Defendant is not liable criminally for aiding, advising, hiring, counseling, conspiring, or otherwise procuring the commission of a crime, unless some crime, including an attempt, is actually committed.[2]

Like the first-degree felony murder instructions of the district court in *Milton,* the district court here included but did not explain the element of "intentionally aided." Thus, the district court's instructions were erroneous because they run contrary to the rule announced in *Milton. See Koppi,* 798 N.W.2d at 362 ("A jury instruction is erroneous if it materially misstates the applicable law."). The question then becomes whether the district court's error was plain.

## B. The error was not plain.

While this appeal was pending, the United States Supreme Court issued an opinion addressing how the "plainness" of an error ought to be construed when the unobjected-to error was not manifestly correct or incorrect at the time of the district court decision. *See Henderson v. United States,* —— U.S. ——, 133 S.Ct. 1121, 185 L.Ed.2d 85 (2013). Because the Minnesota Supreme Court has not yet directly analyzed how we should determine plainness when the law at the time of the error was unsettled, we consider here whether *Henderson* provides a binding rule of law in Minnesota.

Minnesota courts interpret rule 31.02 and the plain-error analysis in accordance with the United States Supreme Court's

**2.** These jury instructions follow the Minnesota jury instruction guide. *See* 10 *Minnesota* *Practice,* CRIMJIG 4.01 (2006).

jurisprudence addressing Fed.R.Crim.P. 52(b). *See State v. Ramey,* 721 N.W.2d 294, 304–05 (Minn.2006) (Gildea, C.J., concurring). But our supreme court has not adopted the federal approach to the plain-error doctrine lock, stock, and barrel. For instance, in *Ramey,* our supreme court concluded that the plain-error doctrine applies to claims of prosecutorial misconduct, but that the burden of showing a lack of prejudice (the third prong of the plain-error analysis) shifts to the prosecution when misconduct has been alleged. *Id.* at 302. This "modified plain error test," *State v. Nissalke,* 801 N.W.2d 82, 103 (Minn.2011), has not found expression at the United States Supreme Court. *See, e.g., Puckett,* 556 U.S. at 142–43, 129 S.Ct. at 1433 (applying the traditional plain-error test to the unobjected-to violation by the prosecution of its obligations under a plea agreement).

The contours of what constitutes the plainness of an error have been in development at the Supreme Court since 1993, when the role of plain error review was first firmly established in *Olano,* 507 U.S. at 732, 113 S.Ct. at 1776. " 'Plain,' " explained the court, "is synonymous with 'clear' or, equivalently, 'obvious.' " *Olano,* 507 U.S. at 734, 113 S.Ct. at 1777. However, in articulating its plain-error doctrine, the Court declined to "consider the special case where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified." *Id.*

The same Court addressed plain error again four years later, this time in the context of the unobjected-to decision of a district court to decide itself the issue of materiality in a perjury prosecution, instead of allowing the jury to determine materiality. *Johnson v. United States,* 520 U.S. 461, 463, 117 S.Ct. 1544, 1547, 137 L.Ed.2d 718 (1997). The district court's decision on the materiality issue was in accordance with then-extant circuit precedent, a precedent that was overturned after Johnson was convicted but before her appeal. *Id.* at 464, 117 S.Ct. at 1547. The Supreme Court held "that in a case such as this—where the law at the time of trial was settled and clearly contrary to the law at the time of appeal—it is enough that an error be 'plain' at the time of appellate consideration." *Id.* at 468, 117 S.Ct. at 1549.

Notably, the district court here committed neither of the errors contemplated in *Olano* or *Johnson,* where an unobjected-to error either directly violated settled law or complied with settled law that was reversed during the pendency of the appeal. Instead, the district court's error here falls into a third category, "the special case where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified." *Olano,* 507 U.S. at 734, 113 S.Ct. at 1777. It is this "special case" that the Supreme Court recently addressed in *Henderson.*

There, the district court sentenced Henderson to an above-guidelines prison term of 60 months on his conviction of being a felon in possession of a firearm. *Henderson,* 133 S.Ct. at 1125. The judge's purpose in departing from the sentencing guidelines was to help Henderson qualify for an in-prison drug rehabilitation program. *Id.* Henderson raised no objection at the time of sentencing. *Id.* He later appealed, arguing that the district court erred when it imposed an above-guidelines sentence. *Id.* While his appeal was pending, the Supreme Court issued an opinion in *Tapia v. United States,* —— U.S. ——, 131 S.Ct. 2382, 180 L.Ed.2d 357 (2011), in which it held that it is error to impose a sentence in excess of the guidelines to enable an offender to participate in rehabilitation. *Id.* The district court's error in

imposing the 60–month sentence on Henderson was not plain before *Tapia,* but became plain after *Tapia. Id.*

In considering Henderson's appeal, the Supreme Court examined its holdings in *Olano* and *Johnson* and concluded that the Federal Rules of Criminal Procedure intend the "phrase 'plain error' [to mean] applying at the time of review," not the time of error. *Id.* at 1127. While the Supreme Court cited a variety of reasons for its conclusion, it appears to have been most offended by the notion that some defendants might indiscriminately be treated differently from others:

> But if the Rule's words "plain error" cover both (1) trial court decisions that were plainly correct at the time when the judge made the decision and (2) trial court decisions that were plainly *incor*rect at the time when the judge made the decision, then why should they not also cover (3) cases in the middle—*i.e.,* where the law at the time of the trial judge's decision was neither clearly correct nor incorrect, but unsettled?

> To hold to the contrary would bring about unjustifiably different treatment of similarly situated individuals.

*Id.*

■ However, a key rationale animating *Henderson* is not at issue in Minnesota state courts. And it is this difference that leads us to decline to apply *Henderson's* holding and instead to apply a time-of-error approach to determining plainness when the law at the time of error was unsettled.

The *Henderson* Court's concerns regarding disparate treatment emphasized the possible disparity between the circuits. 133 S.Ct. at 1128. The Supreme Court analyzed how a time-of-error approach could lead to unequal treatment of different defendants because of differences in the laws among various circuits. *Id.* In

one circuit, a decision of the Supreme Court makes an unobjected-to ruling of the district court clearly lawful as of the time of the ruling. *Id.* While in a sister circuit, a ruling is confirmed as clearly unlawful as of the time of the ruling. *Id.* And yet another circuit's law that was unsettled at the time of the ruling becomes settled as a result of the Supreme Court's decision. *Id.* In the post-*Johnson* landscape, the defendants in the first two circuits are entitled to relief under Fed.R.Crim.P. 52(b), but the defendant in the last circuit is not. *Id.* But this concern about disparities between the circuits is not applicable in Minnesota. A decision of the Minnesota Supreme Court that affects an appealed, unobjected-to error affects all offenders the same throughout this jurisdiction.

One may argue that another form of disparate treatment develops using a law-at-the-time-of-error approach: a defendant who suffered an adverse ruling under unsettled law does not receive the same relief afforded defendants who suffer adverse rulings that were either plainly incorrect under the law at the time of the ruling or were plainly correct but then became plainly incorrect while an appeal was pending. But this argument suffers from at least two shortcomings.

First, applying a law-at-the-time-of-appeal approach does not eliminate disparate treatment, it just creates a temporal transfer of the disparity onto a different set of defendants. The dissent in *Henderson* explained this inequity:

> Consider two defendants in the same circuit who fail to object to an identical error committed by the trial court under unsettled law. By happenstance, Defendant A's appeal is considered first. The court of appeals recognizes that there was error, but denies relief because the law was unclear up to the time of the

court of appeals' opinion. Defendant B's appeal is heard later, and he reaps the benefit of the opinion in Defendant A's case settling the law in his favor. What possible purpose is served by distinguishing between these two appellants? 133 S.Ct. at 1132 (Scalia, J., dissenting). This is precisely the situation here. In *Milton,* our supreme court issued a forward-looking judgment, but determined that the district court's omission of an explanation of the meaning of "intentionally aided" was not plain error "because we have not yet clearly required district courts to include a specific explanation of the 'intentionally aiding' element until today." 821 N.W.2d at 807. Milton did not benefit from the supreme court's clarification of unsettled law, but appellant—who raises the same issue on appeal, but by luck brings it post-*Milton*—stands to reap the benefits of the decision. This disparate treatment is just as problematic as that identified by the *Henderson* majority.

Second, the argument in favor of a law-at-the-time-of-appeal approach presumes that a defendant who receives an adverse ruling under unsettled law is similarly situated to defendants who receive adverse rulings that were plainly wrong under settled law or were plainly correct but become plainly wrong during appeal. But there exists an important difference between these defendants, which means that they are not necessarily "similarly situated." A defendant who does not object to a ruling that was plainly wrong, or that was plainly right and became plainly wrong on appeal, had justifiable reasons for not objecting. In the first instance, the district court "should have known that law, and hence the raising of the point by counsel should not have been needed." *Henderson,* 133 S.Ct. at 1134 (Scalia, J., dissenting). In the second instance, "counsel's raising the point would be futile and wasteful rather than sparing of judi-

cial resources." *Id.* A defendant who detects a problem with the district court's ruling under unsettled law has no analogous justification for not alerting the district court of the problem.

A functional byproduct of limiting an appellate court's authority to address unobjected-to errors is to induce timely objections at the district court so that the district court can "correct or avoid the mistake so that it cannot possibly affect the ultimate outcome." *Puckett,* 556 U.S. at 134, 129 S.Ct. at 1428. Where the law is unsettled, a timely objection can focus the attention of the district court on the issue, induce better-informed decisions at trial, and develop a more useful record to guide an appellate court on review. All this leads us to conclude that a defendant who fails to object to a district court's ruling under unsettled law simply is not similarly situated to defendants reached by the decisions in *Olano* and *Johnson.*

 To conclude otherwise would be to advance a rule of law that is out of step with Minnesota caselaw. It is a well-established principle in our state that "the trial error must have been so clear under applicable law *at the time of conviction,* and so prejudicial to the defendant's right to a fair trial, that the defendant's failure to object—and thereby present the trial court with an opportunity to avoid prejudice—should not forfeit his right to a remedy." *Rairdon v. State,* 557 N.W.2d 318, 323 (Minn.1996) (emphasis added). Our supreme court has repeated and relied upon that same principle several times. *See State v. Tscheu,* 758 N.W.2d 849, 863 (Minn.2008); *Arredondo v. State,* 754 N.W.2d 566, 574 (Minn.2008); *State v. Pilot,* 595 N.W.2d 511, 518 (Minn.1999). And it is a principle consistent with the outcome reached in *Milton. See* 821 N.W.2d at 807. The outcome in *Milton,* by the

way, could be interpreted as a naked rejection of the error-at-the-time-of-review approach advanced by *Henderson.* But *Milton* precedes *Henderson,* and it does not appear that the parties argued the question of how plainness should be measured. Therefore, while our conclusion today is consistent with the outcome in *Milton,* it strains the parameters of that case to conclude that it established a rule of law on the plainness of unobjected-to errors under unsettled law.

■ We are cognizant of a line of cases that can be construed to hold that error is always measured from the time of appeal. *See State v. Jackson,* 714 N.W.2d 681, 690 (Minn.2006); *State v. Ihle,* 640 N.W.2d 910, 917 (Minn.2002); *Griller,* 583 N.W.2d at 741. But this interpretation of these cases does not stand up to scrutiny. *Griller* was the first case to adopt the holding in *Johnson* in Minnesota. Our supreme court characterized the *Johnson* holding as follows: "The [United States Supreme] Court concluded that to satisfy the second prong it is sufficient that the error is plain at the time of the appeal." *Griller,* 583 N.W.2d at 741. *Griller* applied the plain-error analysis in the classic *Johnson* context of an unobjected-to error that was plainly correct at the time of the ruling but became plainly incorrect on appeal.

*Id.* at 740. We detect nothing in *Griller* that enlarges or modifies the holding of *Johnson.* The language from *Griller* describing *Johnson* was later borrowed in *Jackson* and *Ihle,* but both cases, without explaining why, omitted reference to the *Johnson* heritage of the holding. *Jackson,* 714 N.W.2d at 690; *Ihle,* 640 N.W.2d at 917. *Jackson* dealt with a ruling that was largely not erroneous but may have included inconsequential rulings that were erroneous at the time they were made. 714 N.W.2d at 690. *Ihle* addressed a ruling that was erroneous at the time it was made. 640 N.W.2d at 917. None of the cases addressed a ruling like the one here, where the law was unsettled at the time of the ruling. Because none of these cases address plain error under unsettled law, their interpretation of the *Johnson* holding does not apply here. Moreover, the black-letter "plain at the time of the appeal" approach is directly in conflict with *Milton,* which *does* address an erroneous ruling under unsettled law.[3] 821 N.W.2d at 807. This is an error-correcting court, and we apply the best law available to us. *Sefkow v. Sefkow,* 427 N.W.2d 203, 210 (Minn.1988). The conclusion we reach today is our effort to reconcile these holdings and to accurately describe the current state of Minnesota law.

---

**3.** We also observe that a black-letter, time-of-appeal approach does not accurately describe the state of the law before today. Although *Griller* adopted a time-of-appeal approach to errors that were correct at the time of ruling but became incorrect during appeal, we know of no authority for the conclusion that an error that was incorrect at the time of the ruling *and* on appeal receives time-of-appeal treatment. (Perhaps *Jackson* and *Ihle* provide that authority, but our discussion above explains why we doubt that to be true.) To the extent that such a misperception has persisted, *Henderson* laid it to rest when the Supreme Court said that "[n]o one doubts that an (un-objected to) error by a trial judge will ordinarily fall within Rule 52(b)'s word 'plain' as long as the trial court's decision was *plainly incorrect* at the time it was made." 133 S.Ct. at 1127. Of course, this acknowledgment is only significant from a theoretical perspective. From a practical perspective, a ruling that was wrong at the time it was made is just as wrong at the time of appeal, and the plain-error analysis always reaches the same result. Today's decision makes clear that district court errors are always subjected to a time-of-error analysis *except* in the unusual instance when the ruling was plainly correct at the time it was made but became plainly incorrect on appeal. In that special breed of case, the error is reviewed under the law at the time of appeal.

The heart of this dispute is whether an error ought to be "plain" only to an appellate judge or also to a district court judge. The time-of-appeal approach measures plainness from the perspective of an appellate judge, but demands highly developed prescience by the district court judge facing unsettled law, lest that judge be found to have committed plain error. While appellate courts can fairly expect competent and thoughtful rulings from the district courts, it is manifestly unreasonable to assign the pejorative label "plainly erroneous" to a ruling by a district court judge that only arises because the judge's powers of clairvoyance are underdeveloped. The time-of-error approach, in contrast, employs a sensible and predictable meaning of "plainness," one that is the same for the judge at the district court and for the judge at the appellate court. We decline to apply the holding of *Henderson* to cases in Minnesota and apply a time-of-error approach to addressing unobjected-to errors under unsettled law.

## C. The error did not affect appellant's substantial rights.

■ Even if we had found that the district court's error was plain, that error must have affected appellant's substantial rights. *See* Minn. R.Crim. P. 31.02. To affect substantial rights "means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734, 113 S.Ct. at 1778; *accord Griller*, 583 N.W.2d at 741.

To have affected appellant's substantial rights, the jury would have had to conclude that the state had not proved beyond a reasonable doubt that appellant knew that his partner planned to commit a robbery and that he intended his presence at the crime scene to further the commission

of the crime. But the record was sufficient to support this conclusion.

The victim testified at trial that, while he was being attacked, both perpetrators repeatedly asked him where his wallet was. He also testified that both perpetrators dug in his pockets and took his car keys, cigarettes, and lighter. From this, the jury could conclude that appellant was aware that it was the intention of his partner to rob the victim of his wallet. Moreover, it is undisputed that appellant actively participated in the attack that preceded the robbery, punching and kicking the victim until he lost consciousness.

The jury could also have easily concluded that appellant was acting as a principal, and "it follows that the court's instructions on accomplice liability as to that offense would have had no effect on the jury's verdict." *Milton*, 821 N.W.2d at 809 n. 5. Thus, appellant's substantial rights were not violated by the unobjected-to, erroneous jury instructions.

## D. The error did not seriously affect the fairness and integrity of the judicial proceedings.

■ The final inquiry in the plain-error analysis is whether the district court's plainly erroneous jury instruction "seriously affects the fairness and integrity of the judicial proceedings" and requires reversal. *Kuhlmann*, 806 N.W.2d at 853. The fairness and integrity of the judicial proceedings are not in jeopardy here. Indeed, in this case a reversal may actually injure the fairness and integrity of the proceedings. *See Griller*, 583 N.W.2d at 742. Appellant was afforded a complete adversarial trial. He presented his defense and theory of the case. And the jury considered this defense. "Granting [appellant] a new trial under these circumstances would be an exercise in futility and a waste of judicial resources." *Id.*

## DECISION

The district court committed an error in its jury instructions, but that error was not objected to by appellant, the error was not plain to the district court, the error did not affect appellant's substantial rights, and the error did not threaten the fairness and integrity of the judicial proceedings.

**Affirmed.**