GILDEA, Chief Justice.
In 2015, a new statute was enacted that governs the State Auditor's responsibilities over audits of Minnesota counties. The new statute allows counties to "choose to have the [required] audit" performed by either a Certified Public Accounting (CPA) firm or the State Auditor. Minn. Stat. § 6.481, subd. 2 (2016). The State Auditor contends that the new statute violates the Separation of Powers Clause, Minn. Const. art. III, § 1, and the Single Subject Clause, Minn. Const. art. IV, § 17. The district court held that the legislative modification of the State Auditor's duties is constitutional, and the court of appeals affirmed. Because we conclude that the legislative amendments to the State Auditor's county-audit responsibilities do not violate either constitutional provision, we affirm.
FACTS
Rebecca Otto is the eighteenth State Auditor of Minnesota, an executive department office that Article V of the Minnesota Constitution established. Minn. Const. art. V, § 1. With the exception of the Governor, Article V does not expressly detail the duties of the constitutional executive officers. The duties of the State Auditor are instead "prescribed by law." Minn. Const. art. V, § 4 ("The duties ... of the executive officers shall be prescribed by law.").
The State Auditor "superintend[s] and manage[s] the fiscal concerns of the state," Minn. Stat. § 6.01 (2016). Since Minnesota's territorial days, this responsibility has encompassed some oversight of county finances. See, e.g. , Minn. Rev. Stat. (Terr.) ch. 4, art. I, § 6 (1851) (requiring the Territorial Auditor to "keep an account" with the counties in the territory that "correspond[ed] with the ... territorial tax ... to be levied in such counties"). When Minnesota came into the Union in 1858, the State Auditor's duties included the responsibility for "fair and accurate records of all ... public accounts." Minn. Gen. Stat. ch. 5, § 27 (1858).
By 1878, the Public Examiner, an executive department office originally unrelated to the State Auditor, was responsible for examining and verifying county finances. Minn. Gen. Stat. ch. 6, § 91 (1878). After state statutes restructured the Public Examiner's duties in 1973, the State Auditor assumed the responsibility to "visit ... each county and make a thorough examination" of the county's records relating "to the receipt and disbursement" of public funds.[1]
In addition to duties and responsibilities concerning county finances, the State Auditor's responsibility for managing the "fiscal concerns of the State" includes audits of cities and other governmental entities; prescribing accounting and budgeting systems for all political subdivisions; examining the books of contractors, municipal hospitals, and county nursing homes, as needed; and other miscellaneous duties. Minn. Stat. §§ 6.01 -.91 (2016).
Since at least 2003, the statute that requires an audit of county finances has allowed a private certified public accountant to examine county accounts and records. See Minn. Stat. § 6.48 (2004) (stating that the State Auditor may require additional information when "the audit is performed *449 by a private certified public accountant").[2] If an audit is performed by a private CPA firm, the State Auditor may "require additional information from the private certified public accountant," "accept the audit," or "make additional examinations" as the state auditor deems to be in the public interest. Id.
As the undisputed facts show, every 3 years the State Auditor identifies which counties will be audited by the State Auditor's office, and which counties must hire a private CPA firm for their annual audit. For example, during the State Auditor's last cycle of audits before the 2015 legislation at issue here, the State Auditor audited 59 counties and directed 28 counties to retain private CPA firms. In all cases in which the State Auditor directed a county to use a private CPA firm, she had the authority to determine whether to require additional information from the firm, accept the firm's audit, or make her own examination. See Minn. Stat. § 6.48 (2014).
In May 2015, the Minnesota Legislature passed, and Governor Dayton signed into law, S.F. No. 888, the State Government Finance Omnibus Bill. Act of May 23, 2015, ch. 77, 2015 Minn. Laws 1373. Article 2 of this bill included several provisions "relating to the operation of state government," id. at 1373, 1389. As it relates to the State Auditor, the 2015 legislation repealed Minn. Stat. § 6.48 (2014), and in its place, codified a new statute, section 6.481. Act of May 23, 2015, ch. 77, art. 2, §§ 3, 88, 2015 Minn. Laws 1373, 1390-91, 1432. The 2015 legislation made two amendments that are relevant to the claims at issue here. First, the new statute altered the permissive annual county audit, imposing instead a required annual county audit. Compare Minn. Stat. § 6.48 (2014) ("At least once in each year ... the state auditor may visit ... each county and make a thorough examination of all accounts and records...." (emphasis added) ), with Minn. Stat. § 6.481, subd. 2 (2016) ("A county must have an annual financial audit." (emphasis added)). Second, the legislation specifically allows counties to decide who will conduct the required audit: either a private CPA firm or the State Auditor. Minn. Stat. § 6.481, subd. 2 ("A county may choose to have the [required annual] audit performed by the state auditor, or may choose to have the audit performed by a CPA firm...."). Section 6.481 became effective on August 1, 2016. Act of May 23, 2015, ch. 77, art. 2, § 3, 2015 Minn. Laws 1373, 1391.
Following the enactment of section 6.481, the State Auditor notified 61 counties that her office would conduct the audits for the next 3-year cycle. With the notices, the State Auditor also included proposed 3-year contracts for the State Auditor's auditing services. Fifty counties, including Wright, Becker, and Ramsey Counties, refused to sign the contracts. Wright and Becker Counties notified the State Auditor that they intended to use a private CPA firm for the required annual audit. Ramsey County did not state whether it would use a private CPA firm, expressing only concerns about audit costs.[3]
On February 4, 2016, the State Auditor filed a declaratory judgment action in Ramsey County District Court against Wright County, Becker County, and Ramsey *450 County. The State Auditor asked the district court to declare that the State Auditor retains the constitutional authority to choose which counties to audit and the manner in which to audit those counties, regardless of whether the county has also engaged a private CPA firm for the audit. Absent this declaration, the State Auditor asserted, section 6.481 violates the Separation of Powers Clause, Minn. Const. art. III, § 1, by "usurping the State Auditor's exercise of her core function of auditing counties." In addition, the State Auditor alleged that the Legislature violated the Single Subject Clause, Minn. Const. art. IV, § 17, by including section 6.481 in a "single bill with a multitude of other unrelated provisions on ... disparate subjects."
The Counties moved to dismiss the complaint. Wright and Becker Counties asserted that no justiciable controversy was presented by their refusal to sign the State Auditor's proposed 3-year contract. Ramsey County asserted that the claims against it were not ripe because it had not yet made a decision on the choice provided by the 2015 legislation. The district court denied the Counties' motions, concluding that a "justiciable controversy" was presented based on the "constitutional errors" alleged in the State Auditor's complaint.
The State Auditor then moved for summary judgment, relying on State ex rel. Mattson v. Kiedrowski , 391 N.W.2d 777 (Minn. 1986), for her argument that the "Legislature cannot interfere with the core functions of constitutional officers." The State Auditor also asserted that the 2015 legislation "violated the constitutional procedural requirement that legislative acts embrace only a single subject."
The district court granted in part and denied in part the State Auditor's summary judgment motion. The district court concluded that auditing counties is "an essential core function" of the State Auditor. The district court reached this conclusion based on "the title given to the State Auditor," which "necessarily includes auditing funds coming into and out of" the State as well as the 87 counties that make up the State, "the manner in which she performs her duties, and the amount of resources and manpower devoted to auditing counties." Then the district court concluded that section 6.481 did not "transfer the State Auditor's core function of auditing Minnesota counties," but instead only permissibly modified that function. The district court distinguished Mattson , concluding that section 6.481 is not the "drastic overhaul" that was at issue in Mattson , which the district court characterized as transferring away "all of [the State Treasurer's] power, thereby rendering the office a hollow shell." The district court also concluded that the 2015 legislation does not violate the Single Subject Clause because "allowing counties to elect to have an audit performed by a CPA firm is germane to other provisions within the legislation such that the mere filament test is satisfied."
The State Auditor appealed and the Counties filed notices of related appeals. Ramsey County appealed the district court's denial of its motion to dismiss on justiciability grounds, and Wright County and Becker County separately appealed the district court's determination that auditing counties is a core function of the State Auditor.
The court of appeals affirmed the district court. Otto v. Wright Cty. , 899 N.W.2d 186, 198 (Minn. App. 2017). Concerning the single-subject claim, the court of appeals concluded that the 2015 legislation satisfied the "germaneness" test because more than a "mere filament" links the topic of state government operations to county audits. Id. at 196-97. The court also noted that the Single Subject Clause is not *451 intended "to preclude the enactment of comprehensive legislation addressing related topics within a general subject area," id. at 195 (citation omitted), and therefore the "operation of state government" is not a topic that is too broad to comply with the constitution, id. at 196-97.
On the separation-of-powers claim, the court of appeals agreed with the district court that conducting county audits is a core function of the State Auditor. Id. at 193. Then the court of appeals concluded that section 6.481 does not violate the Separation of Powers Clause by giving counties the option to use either the State Auditor or a CPA firm. Id. at 194. The court of appeals reasoned that because the State Auditor retains the authority to "set uniform standards for auditing counties and ensure compliance with those standards," the State Auditor's role and authority as the state's general accountant was not impermissibly modified. Id. at 194-95. On this point, one member of the court of appeals dissented, concluding that section 6.481"deprives the state auditor of her primary core function" and threatens the essential funding of the office. Id. at 199 (Cleary, C.J., dissenting).
We granted the State Auditor's petition for review and the request for cross-review that Becker County and Wright County filed on the core-function issue.[4]
ANALYSIS
This case involves a challenge to the constitutionality of a state statute. We review de novo the constitutionality of statutes, "proceed[ing] on the presumption that Minnesota statutes are constitutional." Associated Builders & Contractors v. Ventura , 610 N.W.2d 293, 298-99 (Minn. 2000). Because the power to declare a statute unconstitutional should be "exercised with extreme caution and only when absolutely necessary," the party challenging the constitutionality of a statute bears a heavy burden. State v. Merrill , 450 N.W.2d 318, 321 (Minn. 1990). The State Auditor asserts that Minn. Stat. § 6.481 (2016) is unconstitutional under both the Separation of Powers Clause in Article III of the Minnesota Constitution and under the Single Subject Clause in Article IV. We consider each argument in turn.
I.
We turn first to the State Auditor's contention that section 6.481 violates the Separation of Powers Clause. This clause of the Minnesota Constitution provides: "The powers of government shall be divided into three distinct departments: legislative, executive and judicial. No person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution." Minn. Const. art. III, § 1. The State Auditor has been part of the constitutional structure of Minnesota's executive department since statehood. See Minn. Const. of 1857, art V, § 1. Although the State Auditor has duties *452 relating to the "offices, institutions, public property, and improvements" of the state's counties, Minn. Stat. § 6.481, subd. 1, as explained earlier, those duties have evolved over Minnesota's history.
The State Auditor asserts that the Legislature cannot alter or usurp the core functions of a constitutional officer without disrupting "the balance of power among the departments of state government." The problem here, the State Auditor contends, is that section 6.481 impermissibly "alters the design and integrity" of an Executive Branch constitutional officer. The legislation does this, the State Auditor argues, by allowing counties to "control their own audits" with the assistance of private CPA firms, which are outside the constitutional structure of Minnesota's state government. Moreover, the State Auditor maintains that limiting her ability to control and conduct county audits erodes the office's principal function and risks leaving it a "shell of its former self" without the ability to perform its core functions in the future.
For their part, the Counties contend that auditing the counties is not a core function of the State Auditor and that even if it were, section 6.481 's modification of that core function does not run afoul of the Separation of Powers Clause. We need not resolve the question of whether auditing the counties is a core function of the State Auditor because even assuming that it is a core function, we conclude that the modification does not violate the Separation of Powers Clause.
The Legislature has the authority under Article V of the constitution to "prescribe[ ]" the "duties" of executive officers, such as the State Auditor. Minn. Const. art. V, § 4. As we noted in Mattson , "this authority includes the power to change, from time to time, such duties as the public health and welfare demand." 391 N.W.2d at 781. But the Legislature cannot, under the guise of modifying the duties of executive officers, "strip[ ] such an office of all its independent core functions." Id. at 782.
In Mattson , we considered a challenge to legislation that "transferred most of the responsibilities of the State Treasurer," a constitutional officer, "to the Commissioner of Finance, a statutory position." 391 N.W.2d at 778. The challenged legislation transferred multiple functions related to the receipt and disbursement of state funds, reconciliation, debt service, and investment activities. Id. at 778-79. In addition, 9 positions in the State Treasurer's Office were transferred to the Commissioner of Finance, 7.5 positions in the State Treasurer's office were abolished, and 3.5 positions were left in the re-organized State Treasurer's Office. Id. at 780 n.3. Finally, the State Treasurer's annual appropriation was reduced by over 70 percent in one fiscal year, from $584,600, to $162,600. Id. We acknowledged that our constitution vests in the Legislature the authority to "prescribe[ ]" the "duties" of executive officers, see Minn. Const. art. V, § 4, but held that the Legislature cannot, under the guise of modifying the duties of executive officers, take away all of the office's "independent core functions." 391 N.W.2d at 782. We contrasted the permissible modification of "certain functions" of a constitutional officer, with "abolishing all of the independent functions inherent in an executive office" to the point of reducing that office to "an empty shell." Id. at 782-83. We held that the legislation transferring most of the positions and functions of the State Treasurer to a non-constitutional officer violated Article V, Section 1 and *453 Article IX, Section 1 of the Minnesota Constitution. Id. at 783.[5]
The State Auditor contends that section 6.481 runs afoul of the principles we enunciated in Mattson . We disagree. Section 6.481 does not "strip" the State Auditor of all of her independent functions. Importantly, the State Auditor retains the responsibility to "superintend and manage the fiscal concerns of the state as required by law." Minn. Stat. § 6.01 (2016). Although section 6.481 specifically gave counties the initial choice to use the services of a private CPA firm for the now mandatory annual audits, the Legislature left untouched the bulk of the duties conferred on the State Auditor by chapter 6. These duties include audits of cities, towns, schools districts, and other political subdivisions; oversight of auditing standards and systems of accounting and budgeting; and ongoing responsibilities relating to examinations, petitions for audit, and other audit activities. See Minn. Stat. §§ 6.46 -.91 (2016). Unlike the legislation at issue in Mattson , which left the State Treasurer with only "minor" duties that were "somewhat difficult to carry out" after responsibility for and control of the State's financial information was transferred to the Commissioner of Finance, 391 N.W.2d at 782, the State Auditor retains a host of duties that are fundamental to the role of this constitutional office within the executive department.
In addition, the Legislature did not materially reduce the State Auditor's budget when enacting the provisions that allow counties to elect between a private CPA firm and the State Auditor. The Legislature has appropriated biennial funding for the State Auditor at steady, if not increasing, levels over the last several fiscal years. Although funding mechanisms may have been altered in the legislative funding process, the amount appropriated to the State Auditor from the general fund has increased from roughly $17.2 million in 2011 to roughly $19.7 million in 2017.[6]
*454 Further, unlike in Mattson , where office positions were actually abolished by the Legislature, nothing in the challenged 2015 legislation addresses the number or assignment of employees in the State Auditor's office.
Finally, even regarding the State Auditor's role in the required county audits, section 6.481 leaves untouched many facets critical to the State Auditor's role in managing the State's fiscal concerns.[7] The State Auditor retains the authority to "examine all accounts and records relating to the receipt and disbursement of the public funds" of each county at any time and without previous notice. Minn. Stat. § 6.481, subd. 1. When a county chooses to use a private CPA firm, the State Auditor "may require additional information from the CPA firm.... [and] may make additional examinations as the auditor determines to be in the public interest." Id. , subd. 3.[8] The private CPA firm must "provide access to data relating to the audit" using the same data classifications that govern the State Auditor. Id. , subd. 4. Moreover, each county is financially responsible for any additional examinations made by the State Auditor, even when the county uses a private CPA firm. Id. , subd. 6 ("If the state auditor makes additional examinations of a county whose audit is performed by a CPA firm, the county must pay the auditor for the cost of these examinations."). In short, this case is materially different from Mattson . Mattson therefore does not support the State Auditor's contention that section 6.481 violates the Separation of Powers Clause.
The State Auditor also relies on our decision in Holmberg v. Holmberg , 588 N.W.2d 720 (Minn. 1999) to argue that section 6.481 unconstitutionally transfers the executive department's authority to control and conduct county audits from a constitutional officer to counties and private entities. In Holmberg , we held unconstitutional the Legislature's creation of an administrative child-support process in the executive department that bypassed the district court's original jurisdiction over child-support disputes. Id. at 723-26. The State Auditor contends that in granting counties the option to use a private CPA firm, the Legislature codified the same type of extra-branch transfer that we condemned in Holmberg ; that is, counties- *455 not a constitutional officer-decide who will audit county funds. We are not persuaded.
The troubling and grave concerns we identified in Holmberg were rooted in legislation that placed an administrative process "on par" with, if not "superior" to the district courts our constitution established. Id. at 724-25. This structure was in direct conflict with the plain language of the constitution. Id. at 724-26 ; see Minn. Const. art. VI, § 1 (stating that the "judicial power of the state is vested in" the appellate courts and the district courts, and that other courts established by the Legislature could only hold "jurisdiction inferior to the district court"). The administrative process also conferred on non-judicial officers the inherent equitable powers exercised by district courts. Holmberg , 588 N.W.2d at 725-26. We also expressed concern with the judiciary's inability to regulate the administrative child-support officers even though they were "engaging in the practice of law." Id. at 726. Thus, in Holmberg , we found a violation of Article III, Section 1 of the Minnesota Constitution based on three "separate and independent" reasons, id. , none of which are presented by this case.
The State Auditor is correct that section 6.481 gives counties, entities that are not created in the constitution, the authority to choose who audits them. But unlike the situation in Holmberg , the constitutionally created entity-the State Auditor-retains substantial and substantive responsibilities in connection with county audits, even those that private CPA firms conduct. These retained responsibilities and authority demonstrate that the Legislature's decision to give counties a choice of auditors is meaningfully different from the constitutional violations and interference with inherent judicial authority that was at issue in Holmberg .
In sum, the facts of this case do not resemble those in Holmberg or Mattson , and the State Auditor has failed to meet her "heavy" burden of showing that section 6.481 unconstitutionally modified or transferred her duties in violation of the Separation of Powers Clause. See State v. Johnson , 813 N.W.2d 1, 11 (Minn. 2012) (citation omitted). The State Auditor suggests that with the 2015 and 2017 amendments, the Legislature reveals a motivation to effectively eliminate the State Auditor. We express no opinion on the impact of the 2017 amendments or future legislative revisions to the State Auditor's duties or funding levels for that office. We simply reiterate that we will not "permit the legislature to gut an executive office" the constitution establishes, because to do so would be "to hold that our state constitution is devoid of any meaningful limitation on legislative discretion." Mattson , 391 N.W.2d at 783.
II.
We turn next to the State Auditor's contention that in enacting section 6.481, the Legislature violated the Single Subject Clause. Article IV, Section 17 of the Minnesota Constitution provides that, "[n]o law shall embrace more than one subject, which shall be expressed in its title." Pointing to the wide variety of topics addressed in the 2015 State Government Finance Omnibus Bill-chapter 77-ranging from appropriations, to provisions that adopt a symbol to represent the State's commitment to honoring members of the military, to railroad condemnation powers and regulation of cosmetologists, the State Auditor argues that this law is the "epitome" of an unconstitutional "garbage bill." The Counties disagree. They argue that the test we have established to judge compliance with the Single Subject Clause-germaneness-is satisfied here.
*456 The Single Subject Clause has been part of our state government framework since the adoption of Minnesota's Constitution. See Associated Builders , 610 N.W.2d at 299 (explaining the consideration of this clause at the 1857 constitutional convention). We have identified two purposes for this provision: to prevent "log-rolling," a legislative process "by which a number of different and disconnected subjects are united in one bill," and "to prevent surprise and fraud upon the people and the legislature" by failing to provide notice of "the nature of the proposed legislation" and the "interests likely to be affected" by the legislation. Johnson v. Harrison , 47 Minn. 575, 50 N.W. 923, 924 (1891). While "this provision is mandatory," we have given it "a liberal, and not a strict, construction." Id. ; see also Townsend v. State , 767 N.W.2d 11, 13 (Minn. 2009) ("The clause is construed liberally...."). Laws passed by the Legislature will comply with this constitutional requirement when all of the provisions "fall under ... one general idea." Townsend , 767 N.W.2d at 13 (citation omitted). In other words, all provisions need to be "so connected or related to each other" that they are all "parts of, or germane to, one general subject." Id. (citation omitted). When a provision fails the germaneness test, we have held that the proper remedy is simply to sever that provision from the rest of the bill. See Associated Builders , 610 N.W.2d at 307 ("Where the common theme of the law is clearly defined by its other provisions, a provision that does not have any relation to that common theme is not germane, is void, and may be severed.").
The State Auditor argues that we must conclude that the subject of chapter 77 is too broad to be a single subject that connects the many disparate provisions of that bill. The title of chapter 77 begins with "[a]n act relating to the operation of state government." 2015 Minn. Laws at 1373.[9] The State Auditor further contends that "numerous provisions" in the law fail to "share a common meaningful thread of germaneness to 'operations of state government.' " She asks us to sever sections 3 and 88(b) of Article 2 from chapter 77. The Counties contend, based on the broad construction we have historically given to this constitutional requirement, that the subject, "operations of state government," does not violate the single-subject requirement. Further, the Counties argue that even if some portions of chapter 77 are not germane to the operations of state government, the sections for which the State Auditor seeks severance are germane to that subject. Thus, the Counties contend, it would be inappropriate to sever germane provisions simply because other, unchallenged, provisions might not be germane. Our precedent compels us to agree with the Counties.
The State Auditor grounds her argument in Associated Builders . In Associated Builders , we affirmed the lower court's decision, which held that a prevailing wage amendment passed as part of an omnibus tax relief and reform bill violated the single-subject requirement. 610 N.W.2d at 295, 304. The amendment provided that "prevailing wages must be paid in all construction or remodeling projects of educational facilities exceeding $100,000." Id. at 295. The appellants argued that the prevailing wage amendment was germane to the subject of "tax relief" and the "operation of state government" because it was intended to overturn a decision of our court that had "narrowed" the previous prevailing wage law. Id. at 296, 302. We rejected that "strained reasoning" because, *457 "[w]hile the amendment may have a tax impact by affecting construction costs, clearly that is not its purpose" and nowhere in the "very short text" was tax relief mentioned. Id. at 302. We concluded that "more than an impact on state finances is required to establish even a minimum thread of germaneness" to the subject of state government operations. Id.
The State Auditor reads Associated Builders too broadly. We did not, as the State Auditor contends, declare in that decision that the subject "state government operations" is too broad, in every instance, to comport with the Single Subject Clause. Our holding was much narrower: we held that the connection advanced by the appellants in that case, between tax relief/government operations and prevailing wage requirements, was too thin of a thread to establish germaneness. Id. at 302-03.
Further, the State Auditor's argument is inconsistent with our earlier cases that define "subject" with a "broad and extended meaning," encompassing one general matter that falls "under some one general idea." Johnson , 50 N.W. at 924 (explaining that "[a]ll that is necessary is that act should embrace some one general subject; and by this is meant, merely, that all matters ... should fall under some one general idea"); see also Townsend , 767 N.W.2d at 13-14 (noting that legislation addressing postconviction remedies, while part of "a wide-ranging bill," was related to the subject of "public safety"); Blanch v. Suburban Hennepin Reg'l Park Dist. , 449 N.W.2d 150, 155 (Minn. 1989) (holding that a law permitting the acquisition of park land without public consent "is germane to the broad subject of appropriations for the operation of state government " (emphasis added) ); Wass v. Anderson , 312 Minn. 394, 252 N.W.2d 131, 137 (1977) (explaining that "transportation" is "a general term," but a "subject may be expressed generally" (citation omitted) ). Consistent with our precedent, the subject-"the operation of state government"-is not too broad to pass constitutional muster in a challenge to legislation that addresses the roles and responsibilities of state entities.
We also conclude that our well-established test-germaneness-is satisfied here. See Johnson , 50 N.W. at 924 (explaining that "all matters" in the challenged law should be "germane to one general subject"). A provision that allows counties to choose between the State Auditor and a private CPA firm for the annual audit required by statute, overseen by the State Auditor and subject to the State Auditor's review and further audit, is clearly germane to the subject of state government operations. The language of section 6.481 directly regulates a state government officer-the State Auditor, by imposing requirements on the Auditor's conduct, review, and use of a county's audit. Given the broad view we have taken of germaneness, we must conclude that the provisions in article 2 of chapter 77 regarding county audits satisfy that test. See Johnson , 50 N.W. at 924 ("All that is required is that the act should not include legislation so incongruous that it could not, by any fair intendment, be considered germane to one general subject.").[10]
*458 We reach this conclusion even though other provisions of the bill may not be germane to the subject "the operation of state government." Those provisions are not before us in this constitutional challenge, and we will not strike down a germane provision of a law simply because other provisions in the law are not germane. To do so would undermine the presumption of constitutionality that we afford to legislation and risk "overstepping our judicial bounds." Associated Builders , 610 N.W.2d at 305.
Based on this analysis, we conclude that the State Auditor's challenge under the Single Subject Clause, Minn. Const. art. IV, § 17, fails. In reaching this conclusion, we reiterate that the test we apply to challenges under the Single Subject Clause is only germaneness . Associated Builders , 610 N.W.2d at 300-01 (explaining that subjects in a bill must be "germane" to a single subject). It is the test that we have applied since at least 1891, see Johnson , 50 N.W. at 924. Yet, a passing comment to the potential outer boundary of germaneness-a "mere filament," see Blanch , 449 N.W.2d at 155 (noting that the "common thread which runs through the various sections" of the challenged law "is indeed a mere filament")-has crept into the lexicon for a challenge under the Single Subject Clause. This test was then further convoluted when we declined to reduce the fine thread of a filament to a "mere figment." See Associated Builders , 610 N.W.2d at 303 (noting that the court would not push a "mere filament" to a "mere figment"). While filaments and figments may have been helpful concepts in light of the facts in Blanch and Associated Builders , neither term replaced or extended the only test we have applied: germaneness.[11]
Finally, in presenting her arguments, the State Auditor and amici imply that if we do not conclude that the Single Subject Clause is violated here, the clause is effectively meaningless. We disagree. We have upheld the legislation at issue in all but one of the single-subject challenges that have reached our court in the last 40 years. See Associated Builders , 610 N.W.2d at 299-302 (reviewing the history of our decisions); see also Wallace v. State , 820 N.W.2d 843, 852 (Minn. 2012) (rejecting a challenge under the Single Subject Clause); Townsend , 767 N.W.2d at 13-14 (same). We have done so not because we have adopted an unduly deferential approach to reviewing legislation for compliance with the Minnesota Constitution or because we do not share the concerns that members of our court have expressed from time to time regarding the legislative process. See Blanch , 449 N.W.2d at 156-57 *459 (noting the court's "increasing[ ] concern[ ] about" possible violations of the Single Subject Clause) (Popovich, C.J., concurring); Mattson , 391 N.W.2d at 784-85 (Yetka, J., concurring). Rather, we have reached these decisions because the challenger failed to meet the "extraordinary burden of persuasion in order to overcome the general presumption of constitutional validity." Blanch , 449 N.W.2d at 157 (Popovich, C.J., concurring). We remain firmly committed to our constitutional duty "to prohibit infringements by either the legislative or executive branch of the government of [the] constitutional rights vested in the people." Mattson , 391 N.W.2d at 785 (Yetka, J., concurring). We trust that the Legislature has heard, and will heed, these warnings.
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals.
Affirmed.
LILLEHAUG, J., took no part in the consideration or decision of this case.

Minn. Stat. § 6.58 (1978) (describing the duties of State Auditor regarding county examinations). See also Act of May 21, 1973, ch. 492, §§ 7, 13, 1973 Minn. Laws 1081, 1085, 1090-91 (transferring duties and responsibilities of the Public Examiner to the State Auditor and the Legislative Auditor).

Even before this amendment, see Act of May 28, 2003, 1st Spec. Sess., ch. 1, art. 2, § 4, 2003 Minn. Laws 1297, 1315, the State Auditor held statutory authority to "contract with private persons, firms, or corporations for accounting or other technical services." Minn. Stat. § 6.58 (1974).

All three Counties agreed to allow the State Auditor to conduct the 2015 audit because section 6.481 was not effective until 2016.

The court of appeals also affirmed the district court's conclusion that the claims against Ramsey County are justiciable. 899 N.W.2d at 198. Ramsey County did not seek review of this part of the court of appeals' decision, and the issue was not otherwise presented in the request for cross-review that Wright County and Becker County filed. Nevertheless, Ramsey County filed a brief here, arguing that the claims against it are not justiciable. As no one requested review of this issue, and we did not grant review on this issue, we will not address Ramsey County's arguments. See Anderly v. City of Minneapolis , 552 N.W.2d 236, 239-40 (Minn. 1996) (declining to dismiss an appeal as moot based on a failure to post the required surety bond because the bond issue was not raised in a petition for further review).

We did not conclude that the statute violated the Separation of Powers Clause, Minn. Const. art. III, § 1. Rather, we determined that the Legislature could not avoid the constitutional process for amending the constitution, Minn. Const. art. IX, § 1, by effectively abolishing an executive office that the constitution established, Minn. Const. art. V, § 1. See Mattson , 391 N.W.2d at 782 (stating that the legislative power to prescribe the duties of some constitutional officers did not "afford the legislature the power to abolish these offices by statute" because Article IX provides "the only procedure by which such offices could be eliminated: the constitutional amendment process").

In 2013, rather than funding the entirety of the State Auditor's operations with general fund appropriations, the Legislature established the State Auditor Enterprise Fund, which was funded by the fees counties and other units of government pay for the State Auditor's audit services. See Act of May 23, 2013, ch. 142, art. 3, § 13, 2013 Minn. Laws 2391, 2412 (repealed 2017). The total amount of fees paid was "annually appropriated to the state auditor to pay the costs and expenses related to the examinations performed, including, but not limited to, salaries, office overhead, equipment, authorized contracts, and other expenses."Id. Following the establishment of the State Auditor Enterprise Fund, the general fund appropriations to the State Auditor decreased from $17,290,000 in the 2012-13 biennium to $4,191,000 in the 2014-15 biennium. See Act of July 20, 2011, 1st Spec. Sess., ch. 10, art. 1, § 4, 2011 Minn. Laws 1393, 1395; see also Act of May 23, 2013, ch. 142, art. 1, § 4, 2013 Minn. Laws 2391, 2394. The State Auditor alleged, in her complaint, that the remaining funding for those years, $12,459,096, came from the State Auditor Enterprise Fund and three special revenue funds. Therefore, the total amount of funding for 2014 and 2015 was $16,875,096. See Act of May 23, 2015, ch. 77, art. 1, § 4, 2015 Minn. Laws 1373, 1376. In 2017, the Legislature eliminated the State Auditor Enterprise Fund, transferred the balance into the general fund, and directed future fees to the general fund. See Act of May 30, 2017, ch. 4, art. 2, § 57, 2017 Minn. Laws 1st Spec. Sess. 1409, 1456. The State Auditor's total appropriations for the 2018-19 biennium increased to $19,785,000. Act of May 30, 2017, ch. 4, art. I, § 4, 2017 Minn. Laws 1st Spec. Sess. 1409, 1413.

The State Auditor asked the district court to construe the language of section 6.481 to permit her to audit counties "irrespective of any county decision to hire a private CPA firm." The district court determined that the plain language of subdivision 2 of the statute gives counties the right to choose who performs the audit. We agree. Although we will construe a statute to avoid a constitutional violation, including a violation of separation-of-powers principles, see State v. Irby , 848 N.W.2d 515, 521-22 (Minn. 2014), the plain language controls, and we will not construe that language in a way that renders plain terms superfluous, 328 Barry Ave., LLC v. Nolan Props. Grp., LLC , 871 N.W.2d 745, 749 (Minn. 2015).

The State Auditor contends that her oversight role was fundamentally altered in 2017 by legislation that requires the State Auditor to accept an audit performed by a CPA firm "if it meets recognized industry auditing standards." See Act of May 30, 2017, ch. 4, art. 2, § 10, 2017 Minn. Laws 1st Spec. Sess. 1409, 1435 (amending subdivision 3 of section 6.481 ). The 2017 legislation was not addressed by the lower courts because it was signed into law on the heels of the court of appeals' decision in this case. But it does not appear that this amendment modified the State Auditor's authority to visit each county (even without notice), examine all accounts and records, require additional information from the CPA firm, and make additional examinations that are deemed to be in the "public interest." See id. at 1435-36.

The heading of article 2 of chapter 77, which includes the provisions that amended the State Auditor's duties, is "State Government Operations." 2015 Minn. Laws at 1389.

The State Auditor also asks us to review the legislative history of S.F. No. 888, the State Government Finance Omnibus Bill, arguing that evidence of impermissible log-rolling requires that we declare the bill unconstitutional. Specifically, she asserts that we used a two-part analysis in Associated Builders , conducting an inquiry into germaneness and legislative history, as part of our decision to strike down the challenged provision. Although we addressed the legislative history in Associated Builders , we did not establish a new, two-part test to a challenge brought under the Single Subject Clause. Instead, we looked to the legislative history after concluding that the bill was not germane in order to respond to the appellants' arguments. See Associated Builders , 610 N.W.2d at 303 (responding to the arguments that there was no evidence of impermissible log-rolling). We used the legislative history in that case solely to reinforce our prior conclusion that the Single Subject Clause was violated because of the lack of germaneness. Id. Having concluded that the germaneness test is satisfied here, we have no need to consider the legislative history of S.F. No. 888.

The concept of germaneness was captured best by Justice Mitchell:
All that is necessary is that [the] act should embrace some one general subject; and by this is meant, merely, that all matters treated of should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject.... All that is required is that the act should not include legislation so incongruous that it could not, by any fair intendment, be considered germane to one general subject.
Johnson , 50 N.W. at 924.